**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randolph Wolfson, | No. CV-08-8064-PCT-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| J. William Brammer Jr., et al., | |
| Defendants. | |

On September 4, 2008, we held a consolidated oral argument on "Plaintiff's Motion for Preliminary Injunction" (doc. 2), "Commission Member Defendants' Motion to Dismiss Plaintiff's Verified Complaint" (doc. 19), and "Defendant Van Wyck's Motion to Dismiss" (doc. 20). We shared with the parties our evaluation of the application for preliminary injunctive relief and indicated that we would make our oral findings under Rule 52(a), Fed. R. Civ. P., at the conclusion of the argument. We also indicated that we would take the motions to dismiss under advisement. However, because we ran out of time, we were unable to make our findings orally and indicated to the parties that we would rule on the request for preliminary injunctive relief first, since the election is coming up, leaving the motions to dismiss for later resolution.

Our views in connection with the application for preliminary injunctive relief remain unchanged. We expressed them at length at the hearing and incorporate those observations by reference here. This order constitutes the court's Findings and Conclusions under Rule 52(a), Fed. R. Civ. P.

1    In granting or denying an application for preliminary injunctive relief, the court
2 considers (1) the probability of success on the merits, (2) the harm that would be caused the
3 applicant if the injunction is not issued, (3) the harm that would be caused the non-moving
4 party if the injunction is issued, and (4) the public interest.  And, in this circuit, we also
5 consider either probability of success on the merits and the likelihood irreparable injury or
6 serious questions are raised and the balance of hardship tips in a party's favor.  *Save Our*
7 *Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005).

8    We first discuss the merits which here include barriers to judicial review.  No one
9 disputes that under *Republican Party of Minnesota v. White*, 536 U.S. 765, 122 S. Ct. 2528
10 (2002), a candidate for judicial office has the right to announce his or her views on disputed
11 legal or political issues.  It is also the case that Wolfson claims that he does not intend to
12 make "pledges, promises, or commitments" within the meaning of Canon 5(B)(1)(d)(i) and
13 Canon 3(E)(1)(e), Code of Judicial Conduct, Rule 81, Rules of the Supreme Court of
14 Arizona.  On this record we believe there is no case or controversy with respect to these two
15 provisions of the Arizona Code.  Thus Wolfson cannot show a probability of success on the
16 merits as to these two provisions because it is highly unlikely we  would ever reach the
17 merits of his First Amendment claim.

18    With respect to the remaining provisions of the Arizona Code of Judicial Conduct,
19 Canons 5(A)(1)(b), 5(A)(1)(d), 5(A)(1)(c), and 5(B)(2), Wolfson has shared with us little
20 authority to suggest that these provisions violate the First Amendment.  Indeed, we noted at
21 oral argument that each of these provisions has an analog in the Code of Conduct for  United
22 States Judges, Canon 7(A)(2), Canon 7(A)(3), and Canon 7(C).  While it may well be that
23 the First Amendment applies differently to sitting judges than it does to candidates for
24 judicial office, Wolfson has made no attempt to show how it might be different.  At all
25 events, we cannot say that Wolfson has shown a probability of success on the merits of his
26 First Amendment claim as to these provisions of the Arizona Code of Conduct.

27    Turning to the question of harm to Wolfson, we just do not see any.  Indeed, the four
28 dissenters in the *White* case believe that any candidate for judicial office who chooses to

1  announce his or her views on disputed legal or political issues (now constitutionally
2  protected) demonstrates "a lack of fitness for the office." 122 S. Ct. at 2547. The Arizona
3  judiciary has done pretty well with these Code provisions in place and thus it is difficult to
4  assign any harm to them other than in the most abstract First Amendment sense.

5  Turning to the harm caused to the defendants and the public, we find that the Arizona
6  judiciary and the public would suffer greatly. The third branch of the Arizona government
7  has tried very hard over the years to remind the public that the third branch is not a political
8  branch, but consists of neutral dispassionate judges who apply the rule of law impartially.
9  Any candidate for judicial office who wants to publicly endorse a candidate for public office,
10 Canon 5(A)(1)(b), or actively take part in any political campaign other than his or her own,
11 Canon 5(A)(1)(d), or solicit funds, Canon 5(A)(1)(c), or personally solicit campaign
12 contributions, Canon 5(B)(2), is likely to cause the public to believe that the third branch of
13 government is just another political branch.

14 We thus believe that under any formulation of the test for preliminary injunctive
15 relief, Wolfson fails. He has failed to show a probability of success on the merits. He has
16 failed to show that he would suffer irreparable injury. The harm to the public and to the
17 Arizona judiciary would be enormous. And even if serious questions are raised (which may
18 be decided in connection with the resolution of the motions to dismiss), the balance of
19 hardship does not tip in Wolfson's favor.

20 Accordingly, IT IS ORDERED DENYING "Plaintiff's Motion for Preliminary
21 Injunction" (doc. 2).

22 DATED this 22nd day of September, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

- 3 -