**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randolph Wolfson, | No. CV-08-8064-PCT-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| J. William Brammer, Jr., et al., | |
| Defendants. | |

The court has before it plaintiff Randolph Wolfson's motion for summary judgment (doc. 69), defendant Chief Counsel of the State Bar of Arizona's ("Bar Counsel") response (doc. 84), defendant Arizona Commission on Judicial Conduct's (the "Commission Members") response (doc. 86), and Wolfson's reply (doc. 92). We also have before us the Commission Members' motion for summary judgment (doc. 71), Bar Counsel's motion for summary judgment (doc. 75), plaintiffs' combined response to these motions (doc. 79), the Commission Member's reply (doc. 91), and Bar Counsel's reply (doc. 89). Finally, we have a motion for summary judgment by defendant Disciplinary Commission (doc. 73). Plaintiff has since voluntarily dismissed all claims against the Arizona Disciplinary Commission (doc. 88). Therefore, the Disciplinary Commission's motion for summary judgment is denied as moot (doc. 73).

**I**

Arizona's Constitution provides for the selection of some state court judges by popular election. See Ariz. Constitution, Art. 6, § 12(A). In an attempt to address the challenges inherent in a system of an elected judiciary, Arizona has adopted a Code of Judicial Conduct (the "Code") that allows judicial candidates to speak to voters about their qualifications and viewpoints on issues, but prohibits them from, among other things, personally soliciting funds for their own campaigns or actively campaigning for others. The Code regulates the conduct of both judges and candidates for judicial office. The defendants contend that the Code attempts to address the areas of greatest possible harm to the appearance and reality of a fair and impartial judicial system.

Defendant Arizona Commission on Judicial Conduct has authority under Article 6.1 of the Arizona Constitution to investigate complaints involving Code violations, bring formal charges against judges, impose informal sanctions, and make recommendations to the Arizona Supreme Court for formal sanctions. Lawyers who are judicial candidates are also required to comply with the Code of Judicial Conduct. See E.R. 8.2(b), Rule 42, Rules of the Ariz. Sup. Ct. Violations of E.R. 8.2(b) are investigated and prosecuted by defendant Bar Counsel.

**II**

In 2006, plaintiff Randolph Wolfson was a candidate for the office of Kingman Precinct Justice of the Peace in Mohave County, Arizona. Compl. ¶ 14. In 2008, Wolfson was a candidate for the office of Judge of the Superior Court of Arizona in Mohave County. Wolfson contends that during his 2006 and 2008 campaigns, he wanted to personally solicit campaign contributions at live appearances and speaking engagements, by making phone calls, and by signing his name to fund appeal letters, in order to support his own campaign. Compl. ¶ 33. He refrained from soliciting, however, because he believed that he was

prohibited by Rule 4.1(A)(6), Rule 81, Rules of the Ariz. Sup. Ct.,[1] which provides that a judicial candidate may not "personally solicit or accept campaign contributions other than through a campaign committee."

Wolfson also wanted to endorse other candidates for political office and support their election campaigns, but he believed that he was prohibited from these political activities by Rules 4.1(A)(2), (3), (4), and (5), which prohibit a judge or judicial candidate from making speeches or soliciting funds on behalf of a political candidate or organization, or endorsing or otherwise actively participating in any political campaign other than his or her own.

Wolfson brought this action seeking a declaration that these provisions of the Arizona Code of Judicial Conduct violate his rights under the First Amendment, and a permanent injunction against their enforcement. By the time Wolfson's motion for summary judgment was fully briefed, Wolfson had lost the 2008 election. On January 15, 2009, because Wolfson had affirmatively stated that he had no intention of participating in the next election, we concluded that Wolfson's claims were not capable of repetition and granted defendants' motion to dismiss on grounds of mootness (doc. 47).

Article III of the United States Constitution limits federal jurisdiction to "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 1253 (1990). An exception to the actual case or controversy requirement permits prospective relief where the action is "capable of repetition, yet evading review." Federal Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462, 127 S. Ct. 2652, 2662 (2007). "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S. Ct. 1660, 1669 (1983). Wolfson represented to the Ninth Circuit that while he had no intention

---

[1] After the complaint was filed in this case, the Arizona Supreme Court amended the Code of Judicial Conduct. The current version of the challenged Rules now appears under the Code's Canon 4, and is essentially the same as the former version. We refer to the current Code provisions only.

of participating in the next election, he desired to participate in a "future judicial election." That court concluded that this was sufficient to satisfy the "capable of repetition" jurisdictional test. Wolfson v. Brammer, 616 F.3d 1045, 1055 (9th Cir. 2010). We now must consider the merits of Wolfson's First Amendment claims.

### III

Canon 4 of the Code of Judicial Conduct broadly provides that "A judge or Candidate for Judicial Office Shall not Engage in Political or Campaign Activity That is Inconsistent with the Independence, Integrity, or Impartiality of the Judiciary." Wolfson challenges five provisions under Canon 4: (1) the prohibition on personal solicitation of campaign contributions by judicial candidates, Rule 4.1(A)(6) (the "solicitation clause"); (2) the prohibition on publicly endorsing or opposing other candidates for public office, Rule 4.1(A)(3) (the "endorsement clause"); (3) the prohibition on making speeches, Rule 4.1(A)(2); (4) soliciting funds, Rule 4.1(A)(4); or (5) actively participating in another's campaign, Rule 4.1(A)(5) (collectively, the "political activities clauses"). While each of these Rules applies equally to a sitting judge or a judicial candidate, Wolfson does not have standing to challenge the Rules as applied to sitting judges. "Wolfson cannot assert the constitutional rights of judges when he is not, and may never be, a member of that group." Wolfson, 616 F.3d at 1064. Therefore, our review is limited to the constitutionality of the Rules as applied to judicial candidates who are not also sitting judges.

The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 223, 109 S. Ct. 1013, 1020 (1989) (quotation omitted). Inherent within this restriction is the protection of "political association as well as political expression." Buckley v. Valeo, 424 U.S. 1, 15, 96 S. Ct. 612, 632 (1976). It is clear, however, that "(n)either the right to associate nor the right to participate in political activities is absolute." U.S. Civil Serv. Comm'n v. Letter Carriers, 413 U.S. 548, 567, 93 S. Ct. 2880, 2891 (1973). Although "[l]aws that burden political speech are subject to strict scrutiny," Citizens United v. Fed. Election Comm'n, 130 S. Ct. 876, 898 (2010), "[e]ven a significant

interference with protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." Buckley, 424 U.S. at 25, 96 S. Ct. at 638 (citations omitted). A judge, of course, holds a judicial office, not a political office. Problems arise when a state chooses to fill judicial offices through the political process.

### A. Constitutional Scrutiny

In Republican Party of Minn. v. White, 536 U.S. 765, 788, 122 S. Ct. 2528, 2542 (2002) (White I), the Supreme Court struck down a Minnesota canon of judicial conduct that prohibited judicial candidates from announcing their views on disputed legal and political issues. Without discussion, presumably because the parties agreed, the Court applied the strict scrutiny test to determine the constitutionality of the restriction. Id. at 774, 122 S. Ct. at 2534; see also Carey v. Wolnitzik, 614 F.3d 189, 199 (6th Cir. 2010) (applying strict scrutiny to solicitation clause); Weaver v. Bonner, 309 F.3d 1312, 1319 (11th Cir. 2002) (same); Republican Party of Minn. v. White, 416 F.3d 738, 775 (8th Cir. 2005) (White II) (applying strict scrutiny to solicitation and political activities clauses).

Nevertheless, the Commission Members suggest that an intermediate level of scrutiny is appropriate to assess the Code's restrictions on direct solicitation, political activities, and endorsements. In Seifert v. Alexander, 608 F.3d 974, 983-88 (7th Cir. 2010), cert. denied, 131 S. Ct. 2872 (2011), the court held that restrictions on endorsements and partisan speeches should be measured by a "balancing test" that weighs the State's interest in limiting speech against a judge's interest in speaking. Under the balancing test, narrow tailoring is not required. "The fit between state interest and regulation need not be so exact." Id. at 985. Instead, the public employee's right to speak as a citizen is weighed against the government's interests as an employer in ensuring an efficient and impartial judiciary.

The balancing test applied in Seifert derives from the line of Supreme Court cases upholding the limited power of governments to restrict their employees' political speech in order to promote the efficiency and integrity of government services. See, e.g., Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 88 S. Ct. 1731 (1968) (balancing

interests of school district against teacher's First Amendment rights); Letter Carriers, 413 U.S. 548, 93 S. Ct. 2880 (upholding Hatch Act restrictions on political activities of federal employees); Connick v. Myers, 461 U.S. 138, 102 S. Ct. 1684 (1983) (balancing the government's interest in running an effective workplace against employees' free speech rights); Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006) (holding that the government can restrict a public official's speech if it is necessary to the effective delivery of public services). In adopting the Pickering line of cases, which specifically targeted political activity by government workers, Seifert's holding arose from an incumbent judge's political speech. Seifert, 608 F.3d at 987. Two months later in Bauer v. Shepard, 620 F.3d 704 (7th Cir. 2010), cert. denied, 131 S. Ct. 2872 (2011), the Seventh Circuit appears to have extended the application of the balancing test to restrictions on political speech of judicial candidates.

We agree with the Seventh Circuit. Candidates for judicial office run against sitting judges. Fundamental fairness requires that they abide by the same rules. Candidates for judicial office must behave like the judges they hope to become. While core speech, as in White I, warrants the application of strict scrutiny, behavior short of true speech does not. An intermediate level of scrutiny strikes an appropriate balance between the weaker First Amendment rights at stake and the stronger State interests in regulating the way it chooses its judges.

The parties agree that preserving the appearance and reality of a non-corrupt, and impartial judiciary is a compelling state interest. Litigants have a due process right to a trial before a judge who has no personal or pecuniary interest in the outcome of the case or bias for or against a party. We apply the Seifert/Bauer balancing test to weigh the State's compelling interests against the competing interests of a candidate for judicial office.

## B. Solicitation Clause

Arizona's Code of Judicial Conduct restricts candidates for judicial office from personally soliciting contributions, either for their own campaign or the campaigns of others. Rule 4.1(A)(6) prohibits a judicial candidate from "personally solicit[ing] or accept[ing] campaign contributions other than through a campaign committee authorized by Rule 4.4."

Campaigning for elected office necessarily involves the expenditure of funds, which in turn requires fundraising. See White I, 536 U.S. at 780, 122 S. Ct. at 2542 ("Unless the pool of judicial candidates is limited to those wealthy enough to independently fund their campaigns . . . the cost of campaigning requires judicial candidates to engage in fundraising.") (O'Connor, J., concurring). In choosing to select judges by popular election, Arizona has itself created the dilemma it now seeks to avoid—the state's ability to provide neutral judges free of partisan or pecuniary influence. See id. 536 U.S. at 788, 122 S. Ct. at 2528 (O'Connor, J., concurring) (stating that "the very practice of electing judges undermines [an] interest" in an actual and perceived impartial judiciary). If the State chooses to elect its judges, it cannot deprive the candidates of an effective opportunity to present themselves to the electorate. At the same time, the State's decision to select its judges by popular election does not eliminate the State's compelling interest in preserving the real and perceived integrity of an unbiased judiciary.

The State argues that the solicitation clause is designed to serve its compelling interest in preserving an impartial judiciary by preventing undue influence over judges by those who give them money. Personal solicitations create the risk that judges' decisions in cases will be affected by campaign contributions. Restrictions on personal solicitations are meant to preserve both the appearance and reality of judicial impartiality. Any candidate for judicial office who would ask the lawyers who would appear before that person for money does not know what it means to be a judge.

In Caperton v. A.T. Massey Coal Co., 129 S. Ct. 2252 (2009), the Court held that a restriction on a judicial candidate's ability to solicit funds for his own campaign is one of many "safeguards against judicial campaign abuses that threaten to imperil public confidence

1    in the fairness and integrity of the nation's elected judges." Id. at 2266-67 (internal
2    quotations omitted). The Court held that due process required the recusal of a West Virginia
3    Supreme Court justice in a case involving a mining company because the CEO of the
4    company had contributed in excess of three million dollars to the judge's campaign. Id. at
5    2257. When a dispute involving the mining company came before the court, the judge
6    refused to recuse himself and ultimately joined the majority in ruling in favor of the mining
7    company. The Court held that by refusing to disqualify himself, the judge had
8    unconstitutionally deprived the parties of a fair hearing. The Court recognized that "there
9    is a serious risk of actual bias" when a judge presides over cases involving persons who had
10   a substantial role in the judge's election campaign. Id. at 2263-64.

11   We agree that Arizona has a compelling interest in regulating campaign solicitations
12   by a judicial candidate in order to ensure the actual and perceived independence, impartiality,
13   and fairness of its judiciary, free from political influence and pressure. Rule 4.1(A)(6)
14   prohibits any form of <u>personal</u> solicitation of campaign funds except through a campaign
15   committee. We recognize the risk of bias arising from in-person solicitations. Successful
16   judicial candidates may appear beholden to their campaign contributors, particularly if the
17   contributor is a lawyer or litigant appearing before the judge. Public confidence in the
18   independence and impartiality of the judiciary is eroded if judges or candidates are perceived
19   to be subject to political influence.

20   Like face-to-face solicitations, methods of indirect solicitations, such as mass mailings
21   signed by the candidate, or presentations to a large audience create the same risk of coercion
22   and bias. By requiring the use of a campaign committee the State has struck a reasonable
23   balance between the need of the candidate for funds and the need of the State for a judiciary
24   not beholden to the lawyers who practice in its courts and their clients who become parties
25   to litigation.

26   We conclude that Arizona Code of Judicial Conduct, Rule 4.1(A)(6), as applied to
27   judicial candidates who are not sitting judges strikes a constitutional balance between the
28

candidates' need for funds and the State's interest in judges beholden to the law and not to those who finance their campaigns.

## C. **Political Activities Clauses**

Wolfson also expressed a desire to participate in other candidate's campaigns through endorsements, speeches, and solicitations on their behalf while he is a candidate for judicial office. He argues that the political activities clauses burden political expression because they impair a candidate's ability to advocate the election of other candidates, and to associate with like-minded candidates. He wishes to identify with the political views of candidates for non-judicial office with the hope it would rub off on his own campaign for judicial office.

Arizona's Code of Judicial Conduct limits a judge or judicial candidate's campaign-related activity to that necessary to advance his own campaign, but restricts him from participating in the campaigns of others. Specifically, the Code provides that a judge or judicial candidate shall not (1) make speeches on behalf of a political organization or another candidate for public office, (2) publicly endorse or oppose another candidate for public office, (3) solicit funds for or pay an assessment to a political organization or candidate, or (4) actively take part in any political campaign other than his or her own. Arizona Code of Judicial Conduct, Rules 4.1(A)(2), (A)(3), (A)(4), and (A)(5).

We conclude that the State has a compelling interest in restricting endorsements and political activities in order to prevent judges from misusing the prestige of their office to further political aspirations of parties or candidates. The State also has a compelling interest in limiting a judge's or judicial candidate's participation in politics in order to avoid the appearance and reality of a biased, partisan judiciary. Preventing actual bias preserves litigants' due process rights. Preventing perceived bias preserves public confidence in a judiciary that is guided by the rule of law, not partisan politics. White I, 536 U.S. at 775, 122 S. Ct. at 2535.

Endorsements, making speeches, and soliciting funds on behalf of other candidates is not the same core political speech at issue in White I. White I authorized a candidate for judicial office to speak freely in support of his *own* campaign by announcing his views on

- 9 -

disputed legal and political subjects. Id. at 788, 122 S. Ct. at 2542. But publicly endorsing or speaking on behalf of other candidates is not the same as expressing one's own political views or qualifications for office. Instead, endorsements, speeches, and solicitations are made to advance other candidates' political aspirations, or to garner votes by way of political coattails. Judges and judicial candidates who publicly endorse, speak on behalf, or otherwise actively participate in the campaign of another candidate undermine the appearance of impartiality and impair the public's confidence in the judiciary.

While this case does not present the question whether the State may restrict a sitting judge's political activities, there is little doubt that a sitting judge's partisan political activities impairs the public's perception of an impartial judiciary and thus the government's ability to promote the fair and efficient administration of justice. Therefore, we recognize the continued validity of the various regulations in both state and federal codes of judicial conduct that prohibit sitting judges from endorsing political candidates, participating in political fundraising, making speeches on behalf of candidates, or serving in leadership roles in political organizations. See White I, 536 U.S. at 796, 122 S. Ct. at 2546 (Kennedy, J., concurring) (noting that the Court did not consider "[w]hether the rationale of Pickering and Connick could be extended to allow a general speech restriction on sitting judges–regardless of whether they are campaigning–in order to promote the efficient administration of justice"). The Pickering line of cases remains relevant to restrictions on the speech of sitting judges. See Seifert, 608 F.3d at 983.

We reject the suggestion that judicial candidates ought to enjoy greater freedom to engage in partisan politics than sitting judges. An asymmetrical electoral process for judges is unworkable. Fundamental fairness requires a level playing field among judicial contenders. Candidates for judicial office must abide by the same rules imposed upon the judges they hope to become.

Applying the Seifert/Bauer balancing test, we conclude that the State's compelling interest in protecting the due process rights of litigants and ensuring the real and perceived impartiality of the judiciary outweighs the candidate's interest in participating in the political

campaigns of other candidates. Therefore, we conclude that the restrictions set forth in Arizona Code of Judicial Conduct, Rules 4.1(A)(2), (A)(3), (A)(4), and A(5) are constitutional.

**IV**

**IT IS ORDERED DENYING** Wolfson's motion for summary judgment (doc. 69).

**IT IS ORDERED GRANTING** the Commission Members' motion for summary judgment (doc. 71).

**IT IS ORDERED GRANTING** Bar Counsel's motion for summary judgment (doc. 75).

**IT IS ORDERED DENYING** the Disciplinary Commission's motion for summary judgment as moot (doc. 73).

DATED this 29th day of September, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge